JUSTICE TRIEWEILER
dissenting.
Fred Stansbury has been sandbagged twice. Once by the attorneys for the University System, and a second time by the Supreme Court. Therefore, I dissent.
On January 3,1991, Stansbury filed a complaint against Ruey-Lin Lin and Eastern Montana College (EMC). He alleged, among other things, that on March 26,1990, when he entered Lin’s sociology class at EMC as a student, he was ordered out of the classroom by Lin. He further alleged that after his departure from the room, Lin embarked on a 30 minute tirade during which he intentionally and maliciously defamed Stansbury by referring to him as “lazy” and “stupid,” and otherwise impugned his character and learning ability.
In the affidavit in support of his amended complaint, Stansbury also pointed out that Lin told the rest of the students in the class that Stansbury was ignorant, obnoxious, incapable of learning, and no good as a person or a student.
Shortly after the original complaint was filed, Stansbury negotiated a settlement with EMC. However, according to the af *251 fidavit of Stansbury’s attorney, the original settlement agreement proposed by counsel for EMC contained language that precluded further pursuit of the claim against Lin individually. Stansbury’s counsel made it plain to EMC’s representative with whom he negotiated that he intended to continue the claim against Lin as an individual. Therefore, the settlement agreement was amended to provide that:
Nothing herein precludes Fred Stansbury from pursuing legal recourse against Professor Ruey-Lin Lin for actions of his outside the course and scope of employment authority of Eastern Montana College or the Montana University System.
The amended settlement agreement was signed on January 23, 1991, and on February 20, 1991, an amended complaint was filed naming Lin as the only defendant and repeating Stansbury’s allegation that Lin’s actions were intentional and malicious.
An appearance was filed on behalf of EMC by Norman C. Peterson, an attorney employed by the Agency Legal Services Bureau of the Department of Justice of the State of Montana.
On March 27, 1991, Peterson filed a motion to dismiss the complaint, and in support of that motion, filed the affidavit of Leroy Schramm. Schramm is the Chief Legal Counsel to the Commissioner on Higher Education, and in his affidavit stated that the actions of Lin which were complained of by Stansbury were committed within the course and scope of Lin’s employment as a professor at EMC.
The District Court granted the motion to dismiss because it concluded that pursuant to § 2-9-305, MCA, a State employee is immune from liability for conduct which the government alleges was within the course and scope of that person’s employment. The District Court did not hold, and Stansbury has not contended on appeal, that Lin was immune from liability based on the strained interpretation that the majority attaches to § 2-9-305, MCA.
Of course, the District Court’s judgment of dismissal could not be affirmed on the basis that Lin acted within the course of his employment because this Court has since held, in Maguire v. State of Montana (Mont. 1992), [254 Mont. 178], 835 P.2d 755, 758-60, 49 St. Rep. 688, 689-91, that where intentional torts are not committed for the benefit of the employer, they are outside the course of employment as a matter of law and the employer cannot be held vicariously liable for the consequences of such an act. In this case, the defamatory conduct that Lin is accused of was an intentional act, and according to the majority opinion in Maguire, was outside the course of his *252 employment as a matter of law. That conclusion cannot be varied by the self-serving affidavit of one of the State’s own agents. The State is judicially estopped from asserting inconsistent arguments regarding the effect of an intentional act — depending on which position best serves the State’s interest in a given case.
Therefore, ignoring all rules of statutory construction, the majority has simply concluded that based on § 2-9-305(5), MCA, recovery cannot be had against an employee of the State based on the same subject matter for which recovery was had against the State. The majority’s decision is based upon the first sentence of § 2-9-305(5), MCA. However, that statute contains a number of provisions, and where a statute contains “several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.” Section 1-2-101, MCA.
For example, § 2-9-305(1), MCA, provides that:
It is the purpose of this section to provide for the immunization, defense, and indemnification of public officers and employees civilly sued for their actions taken within the course and scope of their employment. [Emphasis added.]
Furthermore, the second sentence of subsection (5) explains the first sentence by providing that:
In any such action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee’s employment.... [Emphasis added.]
The construction of the majority ignores this provision of the statute and ignores the express purpose of the statute which is to immunize employees for only those acts which are in the course and scope of their employment.
The majority opinion concludes that the second sentence is not applicable because this action “is not now and never has been an action against a governmental entity.” The majority is incorrect. This action started out as an action against EMC. The complaint was amended to dismiss EMC only after a settlement was entered into with that defendant.
The majority opinion ignores other rules of construction. Section 1- 2-102, MCA, provides that “in the construction of a statute, the intention of the legislature is to be pursued if possible.” Section 2- 9-305, MCA, makes very clear that it is the Legislature’s intent that *253 only those employees who are acting in the course and scope of their employment are immune from personal liability. However, the majority is unimpressed.
Section 1-2-102, MCA, further provides that “when a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it.”
The majority makes passing reference to the fact that § 2-9-305(5), MCA, is not a model of clarity. However, the reason it is unclear is that the general provision contained in the first sentence and the particular provision contained in the second sentence are inconsistent. The first sentence provides for general immunity for an employee when recovery has been had against the governmental entity by whom he or she is employed. However, the second sentence limits that immunity to cases in which there is an acknowledgment or judicial determination that the employee acted within the course and scope of his or her employment. Therefore, the more particular provision found in the second sentence controls over the general statement of intent found in the first sentence. The majority has ignored this rule of construction.
In summary, this Court has previously held that intentional torts are outside the course and scope of State employees’ employment. That rule of law cannot be changed by an affidavit of one of the State’s agents when it serves the State’s interest to do so. Section 2-9-305, MCA, when construed so as to accomplish the intent of the Legislature and give effect to all of its provisions, does not provide immunity to Lin under the circumstances in this case because as a matter of law he was not acting within the course and scope of his employment.
For these reasons, I dissent from the opinion of the majority and would reverse the judgment of the District Court.
JUSTICES HARRISON and HUNT concur in the foregoing dissent.